IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

**FILED**
**FEB - 9 2017**
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

DANA GRAVES )

IHEBEREME CHRISTOPHER )

Plaintiffs, )

(prose) )

5321 JAY ST NE
WASHINGTON, DC )

vs. )

)   Case: 1:17-cv-00262
)   Assigned To : Boasberg, James E.
)   Assign. Date : 2/9/2017
USCIS )   Description: Pro Se Gen. Civil

Defendants )

USCIS Virginia Office
at DHS| CIS Washington DC (Fairfax) DC
2675 Prosperity Ave. MS 2400; Fairfax, VA 20598
PETITION FOR WRIT OF MANDAMUS (MS 1009)

**JURISDICTION:** The United States District Court has jurisdiction over USCIS. The court is rightly chosen.

**VENUE:** USCIS Fairfax Virginia serves Virginia and DC residents. Dana Graves and Christopher Ihebereme reside in the District of Columbia. The United States District court of the District of Columbia is a right venue for this filing.

**RELIEF SORT:**

We; Dana Graves and my husband Christopher Ihebereme, file this WRIT OF MANDAMUS praying the court to:

- Order USCIS to uphold and re-instate the 2013 petition approved by the USCIS Bureau of immigration Appeals. (See Exhibit 1). Alternatively.

- Order UCIS to make a decision on an I-130 Petition For Alien Relative (EAC-15-900-03427)( See Exhibit 2) I filed for my husband on October 3rd 2014 and the interview done since February 13th 20015 at the Fairfax office of USCIS.(See exhibit 3).

## HISTORY/STANDARD OF REVIEW

My name is Dana Graves. I am a United States Citizen, born in Asheboro North Carolina to American parents, who also were born in the United States of America.

I married my Husband Christopher Ihebereme in December 2007. By the grace of God we, amidst various issues and problems have remained married since then. In 2009, I filed an I-130, to adjust his immigration status. The local Immigration office in Virginia denied the petition. We appealed the denial decision through our attorney Mr. Khalid. The United States Bureau of Immigration Appeals overturned the local immigration decision and ruled in our favor.(See Exhibit 1). The Bureau Of Immigration Appeals approved the adjustment petition for my husband and subsequently upheld his Visa petition.

In August 2014 a few weeks after the approval, some Ice agents came to my mother's home in Maryland and asked to interview me. They violated my process rights by not going through our attorney and demanded for an interview from me. They wanted me to withdraw the already approved petition but I refused to do so, telling them we are lawfully married and I love my husband just as he loves me. They asked me several questions concerning our marriage, which I sincerely answered. They told me to sign what we discussed and I did so. The Ice agents who interviewed me, rather than respect my intentions not to withdraw the petition and report what we discussed and quote what I said correctly, they fully misrepresented me, and attached a withdrawal letter to that. They made it seem as if I withdrew the application. But I did not withdraw the petition and will not because I love my husband and know he loves me. We are still married. When we find out that they have withdrawn the approved application, our lawyer demanded for the manuscript of the interview and the original paper that I signed. USCIS lawyers till present did not provide the papers. We wanted to fight it in the civil court but our lawyer said he does not have permit to practice in DC and does not fight for such cases. He referred us to another attorney, but we lacked the funds to pay the attorney. Our attorney then suggested we refile the petition.

On October 3rd 2014, we refiled the petition.(See exhibit 2.)

The same Ice agent who came lying to me the last time came back around April 2015 very early in the morning. He and his colleague woke my husband and me and my mother and siblings up that morning. This time around; I was with my husband in my mother's place when they came. I stay with my mother most of the times because she is disabled and blind, and I am the person taking care of her. They met me with my husband in my mother's place, but though my husband asked me to let them in, I refused them entrance because of the lies and misrepresentations of the last time. I told them to go through our attorney, this time around.

On February 13th 2015, we did the interview on the new petition.

For a United States citizen, the duration for I-130 petitions are normally less than 180 days. Now, we are in the third year of the petition filed in 2014, almost 600 days beyond the standard decision time; USCIS is yet to render a decision in the affirmative or order wise on this petition.

The October 3rd 2014 filing has long passed the estimated processing time for a decision to be made. It has entered the third year, yet USCIS is yet to make any decision.

We have contacted USCIS several times on phone, and emails but they are yet to make a decision on our petition.

We have suffered and keep suffering irreparable damages by this racial discriminatory, redlining and inability of USCIS to do their duties and decide on our case. No two marriages are the same. The issues and problems people encounter in their marriage life determine how they live and practice their marriage union. There are no single ways to a happy married life. Every marriage has their problems and issues, and ours is not different, but the actions of USCIS increase not only our mental agonies but also our financial and marriage lives. They make it difficult for us to live a happy married life, and enjoy the fruit of our marriage. We cannot move freely in and out of the United States to help us have a shot at the American dream, thus my first amendment rights as a US citizen are being violated by USCIS through their actions.

For which we pray the court, to order USCIS to re-instate the approved I-130 (see Exhibit 1) petition they discriminately, maliciously and shrewdly withdrew or alternatively give a decision on the almost three years old application on file.

Respectfully submitted;

Dana Graves;

*[signature]*

Christopher Ihebereme

*[signature]*

5321 Jay Street NE

Washington, DC 20019.

C121212@ymail.com

U.S. Department of Homeland Security
2675 Prosperity Avenue
Fairfax, VA 20598-2440



**U.S. Citizenship and Immigration Services**

*HAND DELIVERED AT INTERVIEW*

February 13, 2015

Christopher Okwuchi Ihebereme
Dana Denise Graves
A # 087-285-136
HAND DELIVERED

Interviewing Officer: Waniewski
Form Type: I-130

## NOTICE OF INTERVIEW RESULTS

You have just completed your interview. USCIS is unable to complete your case at this time. Your case is being continued until a final decision can be made. Please see below for further explanation.

## REASON FOR CONTINUANCE

☒ Your case is being held for review. At this time, USCIS does not require any further information or documents from you. Should further information or documents be required, you will receive a notice in the mail. We may also schedule you for another interview at some point. Otherwise, a final decision will be mailed once your case is complete.

☐ Your case requires additional information. Attached please find a Request for Evidence (RFE) advising what information you need to submit. You are hereby accorded _____ days in which to submit the required documentation by mail. Failure to submit the documentation will result in denial of your case.

☐ Your I-485 interview is complete and appears to be approvable. However, your priority date is not current at this time. Your case will be transferred to the Texas Service Center until your priority date becomes current. Once your priority date becomes current, the TSC will make the final decision on your case.

☐ You must appear at an Application Support Center for biometrics capture and/or fingerprints. Please find attached appointment notice advising you when to appear or you will receive an appointment notice in the mail.

☐ Please refer to attached Request for Evidence (RFE) as it pertains to the filing of an I-601 waiver.

Please allow for no less than 120 days before making a status inquiry on your case. You may make an inquiry through the national customer service line at 800-375-5283. You may also make an InfoPass appointment to discuss your case with an immigration officer at the Washington Field Office. InfoPass appointments may be made online on the USCIS website at www.uscis.gov.

If you change your address, you must file Form AR-11 and contact the national customer service line to ensure that your file and all systems are updated with your current address. Form AR-11 and its instructions may be obtained from the USCIS website.

Sincerely,

Kimberly Zanotti
Field Office Director

cc: Khalid Shekib, Esq.

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

# Form I-797C, Notice of Action

| THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT. |
|---|

| RECEIPT NUMBER<br>EAC-15-900-03427 | | CASE TYPE I130 PETITION FOR ALIEN RELATIVE |
|---|---|---|
| RECEIPT DATE<br>October 3, 2014 | PRIORITY DATE | PETITIONER<br>GRAVES, DANA D. |
| NOTICE DATE<br>November 5, 2014 | PAGE<br>1 of 1 | BENEFICIARY A087 285 136<br>IHEBEREME, CHRISTOPHER O. |
| DANA DENISE GRAVES<br>8802 ROSANNE COURT<br>CLINTON MD 20019 | | Notice Type: Transfer Notice |

This courtesy notice is to advise you of action taken on this case. The official notice has been mailed to the authorized representative. Any relevant documentation included in the notice was also mailed as part of the official notice.

This is to advise you that in order to speed up processing we have transferred the above case to the following USCIS office for processing:

    USCIS-NBC, PO BOX 648005, Lee's Summit, MO  64064

That office will notify you of the decision made on the application or petition.

Please read the following information before attempting to contact the National Customer Service Center for an update:

Please refer to the USCIS processing dates webpage, via the USCIS home webpage http://www.uscis.gov/graphics/index.htm, to locate the processing dates for the specific service center that your case was transferred to.  If the service center is within processing time for your particular application or petition, USCIS cannot provide an update on your case.  If the service center is outside of processing time for your particular application or petition, please call Customer Service at 1-800-375-5283 to request an update.

Please read the following information if you submitted a Premium Processing application or petition:

Please contact the Premium Processing phone number at 1-866-315-5718 for inquiries.  The 15-day Premium Processing clock does not start until the correct office receives the application or petition.

Please see the additional information on the back.  You will be notified separately about any other cases you filed.
U.S. CITIZENSHIP & IMMIGRATION SVCS
VERMONT SERVICE CENTER
75 LOWER WELDEN STREET
SAINT ALBANS     VT    05479-0001
**Customer Service Telephone: (800) 375-5283**



Please see the back of this notice for important information.

Form I-797C  01/02/12 Y

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**Dana Denise Graves**
**5321 Jay Street NE**
**Washington, DC 20019**

**DHS/CIS - Washington DC (Fairfax), DC**
**2675 Prosperity Avenue, M.S 2400**
**Fairfax, VA 20598**

Name: IHEBEREME, CHRISTOPHER O...    A 087-285-136

**Date of this notice: 6/28/2013**

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. § 1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Pauley, Roger
Cole, Patricia A.
Greer, Anne J.

TranC
Userteam: **Docket**

**U.S. Department of Justice**  Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

---

File: A087 285 136 - Fairfax, VA                                               Date: JUN 2 8 2013

In re: CHRISTOPHER OKWUCHI IHEBEREME, Beneficiary of a visa petition filed by
       DANA DENISE GRAVES, Petitioner

IN VISA PETITION PROCEEDINGS

APPEAL

ON BEHALF OF PETITIONER:    Khalid A. Shekib, Esquire

ON BEHALF OF DHS:           Kasey I. Hill
                            Associate Counsel

APPLICATION:    Petition to classify status of alien relative for issuance of immigrant visa

    The petitioner appeals from the Field Office Director's January 20, 2012, decision denying the visa petition filed on behalf of the beneficiary as the spouse of a United States citizen. *See* section 201(b)(2)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1151(b)(2)(A)(i). The appeal will be sustained.

    We review all questions arising in appeals from decisions of United States Citizenship and Immigration Services officers *de novo*. *See* 8 C.F.R. § 1003.1(d)(3)(iii).

    In visa petition proceedings, the petitioner bears the burden of establishing eligibility for the benefit sought. *See Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966). The petitioner must prove the required elements by a preponderance of the evidence. *See Matter of Pazandeh*, 19 I&N Dec. 884 (BIA 1989). In a case in which the *bona fides* of a marriage are challenged, the petitioner must present documentary or testimonial evidence to show that the marriage was not entered into for the primary purpose of evading the immigration laws. *See Matter of Phillis*, 15 I&N Dec. 385 (BIA 1975). Evidence to establish a *bona fide* marriage may include proof of joint ownership of property, proof of joint tenancy of a common residence, proof of commingling of financial resources, birth certificates of children born to the petitioner and the beneficiary, and affidavits of others having knowledge of the *bona fide* nature of the marriage. *See* 8 C.F.R. § 204.2(a)(1)(iii)(B).

    The petitioner married the beneficiary on December 13, 2007, and filed the Petition for Alien Relative (Form I-130) that is the subject of this appeal on June 14, 2009.[1] On January 20, 2011, the petitioner and the beneficiary were interviewed separately regarding the *bona fides* of their marriage. On August 17, 2011, the Director issued a Notice of Intent to Deny ("NOID") the visa petition citing, *inter alia*, discrepancies between the petitioner's and the beneficiary's respective interview responses. The petitioner replied to the NOID on September 16, 2011. The Director

---

[1] The petitioner previously filed a visa petition on the beneficiary's behalf on February 19, 2008; however, she withdrew that petition on March 19, 2009.

A087 285 136

denied the visa petition upon concluding that the petitioner did not meet her burden of proof to establish that she and the beneficiary entered into a *bona fide* marriage.

Upon *de novo* review, we conclude that the petitioner demonstrated, by a preponderance of the evidence, that she and the beneficiary entered into a good-faith marriage. *See Matter of Pazandeh, supra; Matter of Brantigan, supra.* While the record reflects some discrepancies between the petitioner's and the beneficiary's interview testimonies, we do not regard the discrepancies as so significant that they outweigh the areas of consistent testimony and the documentary evidence presented to establish that the marriage is *bona fide*.

The Director identified five areas of inconsistent testimony for which the petitioner's explanations were deemed unpersuasive (Denial Decision at 3). First, the Director observed that, while the petitioner indicated that she began living with the beneficiary in August 2007, the beneficiary stated that they began living together in December 2007 (Denial Decision at 3; Petitioner's Record of Sworn Statement (Form I-877) at 2; Beneficiary's Form I-877 at 4).[2] We note that only the beneficiary was specifically asked, "When did you and your spouse begin living together?", and he responded "December 2007" (NOID at 5; Beneficiary's Form I-877 at 4). Such response was compared against the petitioner's reply to a separate question, which asked her to list her addresses for the past 7 years; she indicated that she moved to her current address (where the beneficiary already had been living) in August 2007 (NOID at 5; Petitioner's Form I-877 at 2). The Director did not credit the petitioner's explanation, in response to the NOID, that she initially moved in with the beneficiary in August 2007, but did not ultimately move there until December 2007, following the date of her marriage (Denial Decision at 3; Response to NOID, Petitioner's Letter). However, we do not regard the cited discrepancy as particularly probative of whether the parties' marriage is *bona fide*, as it is based on a comparison of the parties' responses to questions that were not posed in the same manner, and the responses involve a disparity of only a few months' time.

The second discrepancy cited by the Director involves the petitioner's misspelling of the beneficiary's last name (Denial Decision at 3; Beneficiary's Form I-877 at 2). While the petitioner explained that she has difficulty spelling the beneficiary's last name, the Director did not credit such explanation because of "the number of times [she] misspelled his name" (Denial Decision at 3; Response to NOID, Petitioner's Letter). However, as the petitioner asserts on appeal, the Director does not identify the multiple places in which the petitioner purportedly misspelled the beneficiary's name, and the petitioner's sworn statement reflects that she only wrote his full name once (Denial Decision at 3; Petitioner's Form I-877 at 2). Moreover, unlike the Director, we conclude that petitioner's explanation was reasonable in light of the complexity of the beneficiary's surname and the minor nature of the error, which involved the petitioner's misplacement of letters. Notably, the Director incorrectly spelled the beneficiary's last name in the NOID when attempting to recount the beneficiary's spelling of his own last name (NOID at 8; Form I-877 at 1-2; Beneficiary's Affidavit; Petitioner's Brief).

---

[2] The Director's decision incorrectly refers to an "Ivanhoe St." address as that mentioned by the parties' as their current address (Denial Decision at 3). The record, including the NOID, reflects that both parties listed an address on "Jay St." as their current address (NOID at 5; Petitioner's Form I-877 at 2; Beneficiary's Form I-877 at 2, 4; Petitioner's Biographic Information (Form G-325A)).

A087 285 136

The Director also observed that the parties provided different responses regarding the first time they met (Denial Decision at 3). We agree with the Director that the parties' responses in this area are not entirely consistent, or clear, as to the date and circumstances of their first meeting. In particular, although the petitioner stated that she "first saw" the beneficiary "[a]t the end of 2006," the beneficiary did not provide a clear answer as to when he met the petitioner, stating, "We lived across [sic] street from around 2005 in old park" (Denial Decision at 3; NOID at 5; Petitioner's Form I-877 at 3; Beneficiary's Form I-877 at 3).[3] However, insofar as the petitioner stated that her father introduced her to the beneficiary, while the beneficiary indicated that he "met her and her father," we do not view such response as a substantial discrepancy (Denial Decision at 3; NOID at 6; Petitioner's Form I-877 at 4; Beneficiary's Form I-877 at 4).

While the Director's decision notes a discrepancy between the parties' answers regarding the beneficiary's school schedule, both parties indicated that his schedule was not fixed (Denial Decision at 3; NOID at 5-6; Petitioner's Form I-877 at 4; Beneficiary's Form I-877 at 4). The petitioner stated that the beneficiary "doesn't have [a] set schedule" but "goes to school on mostly Weds. and Monday" and does "school work from home and [the] library" (Denial Decision at 3; NOID at 5; Petitioner's Form I-877 at 4). The beneficiary stated that his schedule was "[n]ot regulated" and that he takes "classes online/in residence (once a week)" (Denial Decision at 3; NOID at 6; Beneficiary's Form I-877 at 4). In response to the NOID, both parties reiterated that the beneficiary's school schedule varies and also noted that the beneficiary studies and meets with classmates in various locations (Response to NOID, Petitioner's and Beneficiary's Letters). Unlike the Director, we conclude that the parties' interview responses are not contradictory, and the petitioner reasonably explained the perceived differences in their answers in response to the NOID.

As to the final interview discrepancy observed, we do not agree that the beneficiary's inability to provide the petitioner's email address at the time of the interview is an indicator that the parties' marriage is not *bona fide* (Denial Decision at 3). The beneficiary stated, in both his interview answer and affidavit in response to the NOID, that he communicates with the petitioner in-person at their home and by telephone; the petitioner indicated that, although she knows the beneficiary's email address, they do not communicate via email (Denial Decision at 3; NOID at 6; Beneficiary's Form I-877 at 6; Response to NOID, Petitioner's and Beneficiary's Letters). We regard the explanations proffered as reasonable, and do not view the beneficiary's inability to recall the petitioner's email address as significant.

Moreover, notwithstanding the interview discrepancies, the petitioner submitted numerous items of documentation in support of her claim that she and the beneficiary intended to establish a life together when they married (Denial Decision at 2; NOID at 2-4). *See, e.g., Matter of Laureano*, 19 I&N Dec. 1, 2-3 (BIA 1983); *Matter of McKee*, 17 I&N Dec. 332, 334-35 (BIA 1980). Such documentation includes evidence reflecting joint tenancy of a common residence and commingling of financial assets and liabilities. *See generally* 8 C.F.R. §§ 204.2(a)(1)(iii)(B)(2)-(3). For example, the record contains a copy of the petitioner's District

---

[3] The Director's decision interprets the beneficiary's statement to mean that he met the beneficiary "at an old park" (Denial Decision at 3). On appeal, the petitioner asserts that she and the beneficiary met in an area called "Oak Park," where they both lived at the time (Petitioner's Brief).

A087 285 136

of Columbia learner's permit and a copy of the beneficiary's driver's license, which both reflect residence at the claimed marital address on Jay Street (Denial Decision at 2; NOID at 2-3). The petitioner also submitted statements from the local water and gas companies issued to both her and the beneficiary at the Jay Street address (Denial Decision at 2, 4; NOID at 2).[4] The Director's decision acknowledges that the joint water account indicates shared liability between the parties, but notes that it does not reflect a "real risk of liability" (Denial Decision at 4). However, the Director's decision does not reference the evidence of other joint utility accounts, which include the statements indicating that the parties hold a shared gas account and the account summary which shows that they share a wireless telephone account (NOID at 2).

Additionally, the Director's decision does not properly account for the proof of joint automobile insurance, which covers two vehicles, and dates back to 2009 (Denial Decision at 4; NOID at 3). Although the Director correctly observes that the 1997 Ford Explorer is titled only in the beneficiary's name, the Director incorrectly states that "[n]o title information is provided for the other vehicle" (*i.e.*, the 1994 Chrysler Concorde) (Denial Decision at 4-5). As the petitioner asserts on appeal, and as mentioned in the NOID, the record contains evidence that the 1994 Concorde was titled in both the petitioner's and the beneficiary's names (NOID at 2, 7; Petitioner's Brief). Thus, the evidence submitted indicates that the parties jointly owned one vehicle for which they both were insured to drive under a shared policy. The Director's decision does not address the petitioner's explanation that she and the beneficiary purchased the 1994 Concorde together after their marriage (though it has since been totaled) and that the beneficiary had owned the 1997 Explorer prior to their marriage (Response to NOID, Petitioner's Letter).

The petitioner also submitted bank statements from 2010 and 2011, which indicate that she and the beneficiary hold a joint bank account (Denial Decision at 2, 4; NOID at 2). We agree with the Director that the earlier statements submitted reflect minimal transactional history; however, the parties explained that they are both unemployed and that the beneficiary's nephews assist them financially (Denial Decision at 4; Response to NOID, Petitioner's and Beneficiary's Letters). Both of the beneficiary's nephews submitted letters stating that they have financially assisted the beneficiary and his family since 2009 (Denial Decision at 2, 4). While the Director properly notes that the letters are not in affidavit form, the petitioner submitted evidence that the beneficiary's nephew, Chidozie, cosigned the mortgage on the parties' home (Denial Decision at 2; Response to NOID, Petitioner's and Beneficiary's Letters). Additionally, although the Director's decision notes that the beneficiary's 2009 income tax return (listing a total income of $81,978) raises questions as to how such income was utilized, the parties explained in response to the NOID that the beneficiary lost his main job in 2009, and was unable to maintain the minimum balance on the business banking account in which he used to hold his earnings (Denial Decision at 4; Response to NOID, Petitioner's and Beneficiary's Letters).

Furthermore, the petitioner submitted an affidavit from her mother and letters from the beneficiary's nephew and a friend that attest to the *bona fide* nature of the parties' marriage. While only the mother's submission satisfies the requirements of an affidavit under

---

[4] Although the Director's decision notes that the earliest water invoice of record is dated August 19, 2011, the record reflects that correspondence from the water company was addressed to both parties on November 2, 2010 (NOID at 3).

4

A087 285 136

8 C.F.R. § 204.2(a)(1)(iii)(B)(5), we nevertheless conclude that the third-party statements bolster the petitioner's overall claim of a good-faith marriage. *See Matter of Laureano, supra*, at 3.

In light of the foregoing, we conclude that, notwithstanding the issues cited by the Director as to the petitioner's submission of documents, the petitioner presented considerable documentary evidence of commingled finances, cohabitation, and a shared life together and adequately explained the concerns raised in the NOID (Denial Decision at 4-5). Moreover, as discussed above, we do not view the testimonial inconsistencies as substantial enough to cast doubt on the parties' otherwise consistent testimonies (Denial Decision at 2-3). Therefore, we conclude that the petitioner met her burden of proof to demonstrate that she and the beneficiary entered into marriage in good faith. *See Matter of Laureano, supra*, at 2-3 (observing that "[t]he conduct of the parties after marriage is relevant to their intent at the time of marriage"). As such, we will sustain the petitioner's appeal and reverse the Director's denial of the visa petition. *See* 8 C.F.R. § 1003.1(d)(3)(iii).

Accordingly, the following orders will be entered.

ORDER: The petitioner's appeal is sustained.

FURTHER ORDER: The visa petition is approved.

_____
FOR THE BOARD